UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUSAN NEIDERT, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Case No. 4:16-cv-00582-NCC <br> ) |
| NANCY A. BERRYHILL,[1] <br> Acting Commissioner of Social Security | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Susan Neidert ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 15) and Defendant has filed a brief in support of the Answer (Doc. 20). Plaintiff has also filed a Reply to the Answer. (Doc. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 10).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on April 26, 2013, alleging an onset date of March 3, 2008. (Tr. 152-158). Plaintiff was initially denied on August 27, 2013, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on October 1, 2013. (Tr. 105-

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

106). The ALJ conducted a video conference hearing on December 8, 2014. (Tr. 53-85). After the hearing, by decision dated December 18, 2014, the ALJ found Plaintiff not disabled. (Tr. 10-25). On February 23, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner. In a separate proceeding, Plaintiff was approved for Supplemental Security Income ("SSI") benefits with an onset in April 2013, the date on which she applied for benefits. (Tr. 9).

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has the severe impairment of mild degenerative disc disease. (Tr. 15). The ALJ determined Plaintiff does not have any impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, and Appendix 1. (Tr. 17).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following limitations. (Tr. 17-18). Plaintiff can lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently. (*Id.*). She can sit, stand, and walk for six hours of an eight-hour workday. (Tr. 18). Plaintiff can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. (*Id.*). She can occasionally stoop, kneel, crouch, and crawl. (*Id.*). The ALJ found Plaintiff was capable of performing her past relevant work as a motor vehicle assembler through the date last insured. (Tr. 20). Accordingly, the ALJ found that Plaintiff was not under a disability at any time between March 3, 2008, the alleged onset date, and December 31, 2012, the date last insured. (Tr. 21).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox*, 495 F.3d at 617.  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of

the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts the ALJ erred by failing to obtain expert medical testimony at the hearing to assess Plaintiff's impairments prior to the date last insured. (Doc. 15 at 9). Second, Plaintiff argues the ALJ's determination that she had the RFC to perform medium work is not supported by substantial evidence. (*Id.*). For the following reasons, the court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Use of a Medical Advisor's Opinion

Plaintiff argues that Social Security Ruling 83-20 requires the ALJ to obtain expert medical testimony in assessing whether Plaintiff's degenerative impairment became disabling before the date last insured. SSR 83-20 sets out guidelines for determining the onset date of a claimant's disability. *Grebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir. 1997); Social Security Ruling 83-20, 1983 WL 31249 (1983) (hereinafter "SSR 83-20"). When determining the onset date for a non-traumatic injury or progressive impairment, the ALJ should consider the applicant's allegations, the applicant's work history, and the medical and other evidence concerning the applicant's conditions. SSR 83-20. The onset date must be based on the facts and must be consistent with the medical evidence in the record. *Id.*

For slowly progressive impairments, it is sometimes impossible to determine the exact date on which an impairment became disabling solely from the medical evidence. *Id.* This is especially true when the alleged onset date and the date last insured are in the distant past and when there are not adequate medical records from the relevant time period. *Id.* When the medical evidence is ambiguous as to the onset date, the ALJ must infer an onset date. *Westbrook v. Astrue*, No. 4:06 CV 997 DDN, 2007 WL 5110314, at *9 (E.D. Mo. Aug. 29, 2017); SSR 83-20. The ALJ's inference depends on the facts of a particular case, but must have legitimate medical basis. *Grebenick*, 121 F.3d at 1200; SSR 83-20. Importantly, SSR 83-20 states the ALJ "should call on the services of a medical advisor when onset must be inferred" to provide a medical basis for an onset date. SSR 83-20. However, when the medical evidence from the relevant time period is unambiguous as to the onset date, the ALJ need not obtain a medical advisor's opinion. *Karlix v. Barnhart*, 457 F.3d 742 (8th Cir. 2006).

Before October 2016, some courts found the language of SSR 83-20 to require the ALJ to obtain a medical advisor's opinion when medical evidence is ambiguous as to an onset date. *E.g.*, *Fischer v. Colvin*, 831 F.3d. 31, 38 (1st Cir. 2016); *Grebenick*, 121 F.3d at 1201 ("If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis.'"); *Westbrook*, 2007 WL 5110314, at *30. Other courts interpreted the use of the word "should" in SSR 83-20 (rather than "must" or "shall") as imposing no strict requirement on the ALJ. *E.g.*, *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir 2008). To clarify the requirements of SSR 83-20, the Commissioner issued an Emergency Message, effective October 17, 2016. Clarification of Social Security Ruling 83-20, *EM-16036*, available at https://secure.ssa.gov/apps10/reference.nsf/links/10172016104408AM (hereinafter "EM-16036"). The Emergency Message unequivocally states that SSR 83-20 does not require the ALJ to obtain a medical advisor's opinion when onset must be inferred. *Id.* Instead, "the decision to call on the services of a medical expert when onset must be inferred is always at the ALJ's discretion." *Id.* The Commissioner's reasonable interpretation of SSR 83-20 is entitled to deference. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) ("We defer heavily to the findings and conclusions of the SSA.").

As such, the court need not decide whether the medical evidence is ambiguous in order to address Plaintiff's argument. SSR 83-20 requires only that the inferred onset date "have a legitimate medical basis." SSR 83-20. To that end, SSR 83-20 suggests the ALJ call upon a medical advisor in some cases to provide that legitimate medical basis. *Id.* The ALJ retains considerable discretion in determining whether an onset date is supported by medical evidence. *Id.*; *EM-16036*. To the extent Plaintiff asserts the ALJ *must* call upon a medical advisor to infer

7

an onset date, the court rejects this argument and instead finds it is within the ALJ's discretion to choose not to elicit the testimony of a medical advisor.

In the alternative, even if a medical advisor's opinion is required when the medical record is ambiguous, the Court finds the medical evidence from the relevant time period to be unambiguous. The critical question here is not the exact onset date of Plaintiff's disability, but rather whether the onset date is before the date last insured. *Grebenick*, 121 F.3d at 1201. Despite the developed record, there is little objective evidence suggesting Plaintiff was disabled before the date last insured. The objective medical evidence from before the date last insured shows only moderate findings in Plaintiff's back and lower extremities. (Tr. 285, 293, 323-24, 330, 332, 337-38). Medical evidence of Plaintiff's disability is also lacking after the date last insured, although a 2014 x-ray revealed "S-shaped" scoliosis of the thoracic spine for the first time. (Tr. 275). While two medical opinions—one from Dr. Stephen Williamson, a consultative examiner, dated July of 2013 and one from Nurse Jimmy Bell, RN, FNP, Plaintiff's primary care provider, dated November of 2014—indicate Plaintiff was more limited in terms of standing and lifting than the ALJ determined she was in December of 2012. (Tr. 17-18, 257-68, 381-83). However, these opinions do not rise to the level of creating an ambiguity. Because Plaintiff's condition is progressive, it would not be surprising if she were slightly more impaired after the date last insured than she was before it. Although medical evidence from after the date last insured may shed light on Plaintiff's condition before the date last insured, the opinions are not enough to create a reasonable ambiguity, especially in consideration of the objective evidence from the relevant period. Therefore, the medical evidence in the record unambiguously supports the inference that Plaintiff was not disabled prior to the date last insured, and thus a medical advisor is unnecessary under any reasonable interpretation of SSR 83-20. Accordingly, the court

finds the ALJ did not err by declining to call upon a medical advisor at the administrative hearing.

### B. RFC Determination

Plaintiff next argues there are several flaws with the ALJ's RFC determination. (Tr. 9). First, Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence. (*Id.*). Specifically, Plaintiff points to Dr. Williamson's consultative report dated July 13, 2013 and Nurse Bell's Medical Source Statement date November 25, 2014, both of which suggest Plaintiff was capable of performing light to sedentary work. (Tr. 257-68, 381-83). Second, Plaintiff argues the ALJ erred by improperly discounting these two opinions, thereby improperly substituting his own opinion for that of a medical professional. (Tr. 13).

"RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling 96–8p, 1996 WL 374184 at *2. RFC is "the most a claimant can do despite his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ultimate burden of establishing the RFC is on the claimant. *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016). The ALJ's RFC assessment must be based on "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a). In evaluating the ALJ's RFC assessment, "we consider all of the evidence that was before the ALJ, but we do not re-weigh the evidence, and we defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). RFC is a medical question, and an ALJ's assessment must be based on some medical evidence, but an

ALJ is not limited to considering medical evidence only. *Cox*, 495 F.3d at 619. The question before the court is whether substantial evidence supports the ALJ's RFC determination, not whether the record supports a different, more limited RFC. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014).

After consideration of the record as a whole, the ALJ determined Plaintiff has the RFC to perform medium work[2] with the following limitations. (Tr. 17). Plaintiff is limited to lifting, carrying, pushing, and pulling up to 50 pounds occasionally and up to 25 pounds frequently. (Tr. 17-18). Plaintiff is able to stand, walk, and sit for six hours in an eight hour workday. (Tr. 18). Plaintiff is able to occasionally climb ramps and stairs, but never able to climb ladders, ropes, and scaffolds. (*Id.*). Plaintiff is not capable of stooping, kneeling, crouching, or crawling. (*Id.*).

In determining Plaintiff's RFC, the ALJ first addressed Plaintiff's allegations of pain and limited functionality. (*Id.*). An ALJ may discount a claimant's subjective claims of extreme pain or limitations if such claims are inconsistent with the claimant's daily activities. *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ reviewed Plaintiff's testimony that she was able to cook, sweep, mop, vacuum, and dust on a daily basis. (Tr. 18). The ALJ also considered Plaintiff's statements that she was able to care for her grandson and her landlord by cooking meals, doing laundry, and cleaning up after them, and was able to drive and shop in stores, albeit with some limitations. (*Id.*). The ALJ further reviewed Plaintiff's testimony that she volunteered, with some accommodations, at a center in St. James, Missouri. (*Id.*). Despite Plaintiff's complaints of severe pain and limitations, the ALJ properly found Plaintiff's own testimony about her daily activities did not support a more limited RFC. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (plaintiff dressed and bathed herself, did housework,

---

[2] "Medium work" is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

cooked, and shopped); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (plaintiff cared for a child, shopped in stores, and occasionally drove); *Nguyen*, 75 F.3d at 429 (plaintiff visited neighbors, cooked meals, did laundry and attended church); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (plaintiff cooked breakfast, cleaned his house, did other chores, visited friends and relatives, and attended church at least twice a month).

The ALJ next considered Plaintiff's work history in relation to her claims of severe limitation. (Tr. 19). The ALJ noted that Plaintiff's steady work history from 1998 to 2007 would normally support her claims that she was unable to return to work. (*Id.*). However, a claimant's credibility is weakened when they stopped working for a non-medical reason. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015). The ALJ found Plaintiff not fully credible because Plaintiff testified that she quit working because the factory closed down and that she did not seek other employment thereafter in order to care for her grandson. (Tr.19). *Eichelberger*, 390 F.3d at 590 (holding the ALJ properly discounted claimant's complaints in part because claimant stopped working around the same time she became her grandchild's primary care giver).

The ALJ also examined the medical evidence in determining Plaintiff's RFC. The ALJ noted there is little mention of Plaintiff's back problems prior to December 31, 2012, the date last insured. (*Id.*). The earliest medical evidence of Plaintiff's back problems is dated October 17, 2011, when x-rays first showed signs of mild degenerative disc disease. (Tr. 285). Plaintiff did not see a doctor about her back again until 2013, after the date last insured. (Tr. 257-68). Further x-rays of Plaintiff's spine, dated August 8, 2013, confirmed the diagnosis of mild degenerative disc disease, but showed no significant change from 2011. (Tr. 269). On September 4, 2014, well after the date last insured, x-rays of Plaintiff's spine showed mild degenerative disc disease, as well as "S-shaped" scoliosis. (Tr. 275).

The medical evidence of Plaintiff's knee pain from the relevant period also supports the ALJ's RFC determination. Plaintiff first presented with knee pain in 2008. (Tr. 337-38). On October 24, 2008, images of Plaintiff's knee showed osteoarthritis and joint effusion. (Tr. 293). Plaintiff was prescribed Feldene, a non-steroidal anti-inflammatory. (Tr. 332). Plaintiff returned for a follow-up two weeks later on November 7, 2008 and reported her knee had improved significantly. (Tr. 330). Carol Teague, A.P.R.N., instructed Plaintiff to continue dieting, exercising, and taking her medications. (*Id.*). Plaintiff did not complain about knee pain again until she saw Nurse Practitioner Teague on November 11, 2009. (Tr. 323-24). At that visit, Nurse Practitioner Teague prescribed Celebrex, another non-steroidal anti-inflammatory. (*Id.*). Plaintiff did not seek further treatment for knee pain before the date last insured. Generally, impairments that can be controlled through treatment are not disabling. *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012). Failure to seek medical attention can be inconsistent with a claimant's complaints of severe impairments. *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989).

The ALJ determined the medical evidence showed "only mild" impairments prior to the date last insured. (Tr. 19). The court finds that this evaluation is supported by sufficient evidence such that a reasonable mind could have drawn the conclusion. To the extent Plaintiff argues the medical evidence more strongly supports a different evaluation, that argument is misplaced. *Davis*, 239 F.3d at 966 (citing *McKinney*, 228 F.3d at 863). The court need only determine whether a reasonable mind could have come to the same conclusion as the ALJ. *Id.*

Turning to the medical opinion evidence, Dr. Williamson opined that Plaintiff had some postural and range of motion limitations, but was otherwise capable of lifting up to twenty pounds frequently, standing and walking occasionally, and sitting continuously. (Tr. 261). Dr.

Williamson's opinion is consistent with a finding that Plaintiff is capable of performing only light to sedentary work. 20 C.F.R. § 404.1567(a-c). However, the ALJ discounted Dr. Williamson for two reasons. First, the ALJ found Dr. Williamson's opinion was inconsistent with other, objective medical evidence that showed only mild impairments (Tr. 19). Second, the ALJ discounted Dr. Williamson's opinion because it was not given until more than six months after the date last insured. (*Id.*).

As a preliminary matter, it is important to note Dr. Williamson was not a "treating source," so his opinion is not entitled to controlling weight. *See* 20 C.F.R. § 404.1527. Instead, the ALJ must evaluate Dr. Williamson's opinion based on factors including, but not limited to, the nature and length of the source's relationship with claimant, the evidence on which the source based the opinion, and the opinion's consistency with the record as whole. *Id.* The ALJ may properly discount a medical source's opinion if the opinion is not well supported by, or inconsistent with, other objective medical evidence in the record. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007); 20 C.F.R. § 404.1527(c)(4). Evidence from after the date last insured can help to "elucidate a medical condition during the time for which benefits might be rewarded," but such evidence may also be discounted because of the time that has passed. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (quoting *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998)).

As previously discussed, the ALJ properly weighed the medical evidence up to the time of Dr. Williamson's opinion and determined that it showed only mild impairments. (Tr. 16). Thus, the ALJ did not err in discrediting Dr. Williamson to the extent his report reflected more severe limitations than mild findings in the record would suggest. Although a relatively short amount of time passed between the date last insured and Dr. Williamson's opinion, the ALJ is

13

justified in discounting Dr. Williamson's opinion because the opinion was given after the date last insured. The combination of the opinion's inconsistency with other medical evidence and its timing were a proper basis on which to discount Dr. Williamson's report.

Plaintiff also argues the ALJ improperly discounted Nurse Bell's Medical Source Statement. (Doc. 15 at 14). Nurse Bell states Plaintiff could perform "low stress" work without being off task, although she would need breaks and would likely have "good days" and "bad days." (Tr. 383). Nurse Bell's opinion also indicates greater limitations in sitting, standing, and lifting than those set out in the ALJ's RFC determination. (Tr. 18, 382). The ALJ assigned Nurse Bell's opinion "little weight" for three reasons. (Tr. 20). First, the ALJ determined that Nurse Bell's opinion indicates restrictions that are not consistent with the objective medical evidence prior to the date last insured. (*Id.*). Second, the ALJ determined the limitations described by Nurse Bell were inconsistent with Nurse Bell's own treatment notes. (*Id.*). Third, Nurse Bell did not examine Plaintiff until almost one year after the date last insured and did not complete the Medical Source Statement until nearly two years after the date last insured. (*Id.*).

Nurse Bell, as a nurse practitioner, is within the "other" medical source category and his opinion is therefore not entitled to controlling weight. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007). The ALJ may properly discount Nurse Bell's opinion to the extent it contradicts the objective medical evidence. *Casey*, 503 F.3d at 694 (8th Cir. 2007); 20 C.F.R. § 404.1527(c)(4). As with Dr. Williamson's opinion, the ALJ properly discounted parts of Nurse Bell's opinion to the extent they are inconsistent with mild objective medical findings prior to the date last insured. (Tr. 19).

Additionally, the ALJ properly discounted Nurse Bell's opinion because it was inconsistent with his own treatment notes. An ALJ may discount a medical opinion that is

14

inconsistent with the source's own treatment notes. *Milam*, 794 F.3d at 983; *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008). "In the absence of other evidence in the record, a physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013).

In February of 2014, Nurse Bell noted that Plaintiff would be able to begin a walking exercise program that spring. (Tr. 363). In May 2014, Nurse Bell indicated that he did not "necessarily agree" with Plaintiff's decision to apply for disability because he believed Plaintiff could work and would improve her health with lifestyle changes. (Tr. 354). He took a "very strong stand" on Plaintiff's diet and weight issues. (*Id.*). In July 2014, Nurse Bell again instructed Plaintiff to exercise three to four times per week. (Tr. 350). In September of 2014, just two months prior to his Medical Source Statement, Nurse Bell noted that Plaintiff was successfully losing weight and suggested she continue exercising once she recovered from a back strain she suffered while lifting something. (Tr. 345).

The Court finds that the ALJ reasonably discounted Nurse Bell's opinion as inconsistent with his own treatment notes. Nurse Bell's repeated instructions for Plaintiff to exercise throughout 2014 seem inconsistent with the limitations described in his 2014 Medical Source Statement. Nurse Bell's treatment notes indicate that he believed Plaintiff was capable of working and exercising long after the date last insured. (Tr. 345, 350, 354, 360). Therefore, the ALJ properly discounted Nurse Bell's Statement to the extent the Statement suggests Plaintiff had severe restrictions in lifting and standing prior to the date last insured.

The ALJ also properly discounted Nurse Bell's opinion because it was not given until well after the date last insured. (Tr. 19). Medical evidence from after the date last insured must be considered, but the evidence is only helpful insofar as it relates to the claimant's condition

15

before the date last insured. *Cox*, 471 F.3d at 907; *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). Plaintiff did not establish care with Nurse Bell until December 2013, nearly one year after Plaintiff was last insured. (Tr. 369-73). Nurse Bell did not complete his Medical Source Statement until November 2014, nearly two years after the date last insured. (Tr. 381-83). Because almost two years had passed, Nurse Bell's Statement had substantially less power to elucidate Plaintiff's condition on the date last insured. Nurse Bell's Medical Source Statement reflects his opinion of Plaintiff's condition in November of 2014, but he does not indicate whether he believed Plaintiff was in a similar or worse in December of 2012. (Tr. 381-83). Objective medical evidence from the relevant period is likely to give a more reliable indication of Plaintiff's condition on the date last insured. Therefore, the ALJ did not err in discounting Nurse Bell's Medical Source Statement and instead giving greater weight to medical evidence from before the date last insured.

Finally, Plaintiff cites *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) and *Freeman v. Astrue*, 2011 WL 241951 at *4 (W.D. Mo. Jan. 24, 2011) in support of her argument that the ALJ erred by substituting his own opinion for that of a medical professional (Doc. 15 at 13). However, those cases are distinguishable from Plaintiff's case because the medical opinions improperly ignored in *Shontos* and *Freeman* were both given during the relevant period and based solely on medical evidence from the relevant period. *Shontos*, 328 F.3d at 426; *Freeman*, 2011 WL 241951, at *1-2. Additionally, in *Shontos*, the ALJ erred by giving greater weight to the opinions of nontreating, nonexamining medical consultants than he gave to the opinions of three treating medical sources. *Shontos*, 328 F.3d at 427. Here, Nurse Bell is a treating source, but, unlike in *Shontos*, the ALJ did not "rel[y] on the opinions of nontreating, nonexamining medical consultants" in discounting Nurse Bell's opinion. *Id.* Instead, the ALJ relied on

16

objective medical evidence from the relevant period and Nurse Bell's treatment notes. (Tr. 19-20).

In *Freeman*, the ALJ improperly discounted a consulting psychologist's opinion as inconsistent with the claimant's daily activities, even though the psychologist considered the claimant's activities when making her assessment. *Freeman*, 2011 WL 241951, at *4. Because the psychologist accounted for the claimant's daily activities in her assessment, the ALJ needed to "provide additional explanation why [the psychologist's] opinion should be dismissed." *Id.* Here, there is no evidence that Dr. Williamson or Nurse Bell considered the full range of Plaintiff's activities. Nurse Bell's opinion does not mention Plaintiff's daily activities. (Tr. 381-83). Dr. Williamson's report notes that Plaintiff's typical day consists of "volunteering at a care center, reading, and resting." (Tr. 259). Plaintiff testified, however, that she was capable of performing more strenuous activities on a daily basis, including cooking, getting dressed, sweeping, mopping, doing laundry, driving, and shopping. (Tr. 75-76, 186-89). Plaintiff cares for her grandson and a small dog. (Tr. 187). She also helps looks after her landlord by doing his laundry, cooking his meals, and picking up after him. (*Id.*).

Furthermore, inconsistency with Plaintiff's daily activities is only one reason the ALJ discounted the opinions of Dr. Williamson and Nurse Bell. The ALJ did "provide additional explanation" for discounting the medical opinions by explaining that he found both opinions were inconsistent with the objective medical evidence from the relevant period and were given too far after the date last insured. (Tr. 19).

Therefore, the court finds that the ALJ properly evaluated the opinions of Dr. Williamson and Nurse Bell. The ALJ provided adequate reasons for discounting these opinions and did not

17

improperly substitute his own judgment for that of a medical professional. Substantial evidence in the record supports the ALJ's RFC determination.

## V. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 26th day of September, 2017.

 /s/ Noelle C. Collins  
NOELLE C. COLLINS  
UNITED STATES MAGISTRATE JUDGE